UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOREN SWEARINGEN,<br><br>Plaintiff,<br><br>v.<br><br>WESTLAKE HEALTH CARE PLAN; BLUE CROSS BLUE SHIELD OF GEORGIA, INC. dba ANTHEM BLUE CROSS BLUE SHIELD,<br><br>Defendants. | Case No. 2:20-cv-02052-MCS-JEM<br><br>**FINDINGS OF FACT AND CONCLUSION OF LAW** |

Plaintiff Loren Swearingen brings this action under the Employment Retirement Income Security Act of 1974 ("ERISA") against Defendant Blue Cross Blue Shield of Georgia, Inc. dba Anthem Blue Cross Blue Shield ("Anthem") alleging he was wrongfully denied his request for Proton Beam Radiation Therapy ("PBRT") under the terms of the Westlake Health Care Plan ("Plan"), which is a self-insured employee benefit plan. After reviewing the administrative record ("AR") and considering the parties' trial briefs, the Court makes the following findings of facts and conclusions of law.

# I. FINDINGS OF FACT[1]

## Plaintiff's Claim and Appeal

In November 2017, Plaintiff was a 63-year-old man diagnosed with high-volume, high-risk prostate cancer with accompanying urinary symptoms and erectile dysfunction. AR110; 134. Plaintiff sought treatment at MD Anderson in November 2017 and was recommended PBRT by Dr. Seungtaek Choi. AR129-134. Dr. Choi wrote: "I would recommend proton beam radiation therapy over x-ray therapy due to recent publications showing a higher cure rate and lower side effect risks with proton therapy in this healthy 63-year old patient." AR134. Dr. Choi claimed PBRT was medically necessary for Plaintiff because it reduced the risk of creating a radiation-induced malignancy. AR747. On December 4, 2017, MD Anderson requested benefits for PBRT for Plaintiff and provided procedure codes and medical records to Anthem. AR128-146. Anthem denied the request on December 5, 2017, writing that "medical studies we have seen do not show that this treatment works as well as other treatments for this type of cancer," claiming that the treatment is investigational and not medically necessary, and citing its medical necessity guidelines. AR81. On December 7, 2017, MD Anderson submitted an appeal on Plaintiff's behalf. AR108. On December 10, 2017, Anthem upheld its coverage decision and denied the PBRT as experimental/investigational, explaining that the request had been reviewed by a Physician Reviewer who is board certified in oncology. AR738.

On December 13, 2017, Plaintiff appealed Anthem's initial denial with Dr. Choi's assistance. AR1968-1993. Anthem upheld the denial on January 13, 2018, noting again that PBRT was investigational and that the appeal had been presented to the Voluntary Appeal Panel, which determined medical studies do not show that PBRT works as well as other treatments for prostate cancer. AR738. On February 5,

---

[1] Any conclusion of law which is deemed a finding of fact is incorporated herein by reference.

2018, Dr. Choi submitted another appeal on Plaintiff's behalf. AR744-750. Dr. Choi wrote that PBRT "is the most advantageous treatment for [Plaintiff] as it will limit excess dose to his bladder, small bowel, rectum and surrounding pelvic tissues, thus preventing any worsening of his symptoms." AR744. Dr. Choi explained the difficulties in obtaining a telephone call with Anthem's physician to discuss the treatment and Anthem's delays in rendering the appeal decision. AR745. Dr. Choi wrote that the delays by Anthem "ha[ve] led to an absolutely unnecessary delay in Mr. Swearingen's care for his *life-threatening cancer!*" AR745. Dr. Choi contended that Anthem's guidelines were outdated, inapplicable, and unsupported by the medical studies, which he detailed at length. AR746-747. On February 23, 2018, a third-party external reviewer, Advanced Medical Reviews ("AMR"), wrote to Plaintiff and noted, "After careful consideration of all relevant medical information, attending health care professional's recommendation, appropriate practice guidelines, applicable criteria sets, standards and interpretative guidelines, and the terms of the plan, AMR upholds [Anthem's] decision and the request is denied." AM754.

AMR provided Plaintiff with its Peer Reviewer Final Report, wherein an independent medical reviewer reviewed Anthem's decision. AR3973-3975. The AMR reviewer considered Plaintiff's medical records, a letter from Dr. Choi, Anthem's Medical Policy, and the Plan. AR3973-3975. The AMR reviewer also considered medical literature submitted with Plaintiff's appeals, including studies from the Journal of the American Medical Association and the American Society for Radiation Oncology's ("ASTRO") Medical Policy for Proton Radiation. AR3973-3975. The AMR reviewer concluded that "proton beam radiation is not medically necessary for treatment of this patient's high risk prostate cancer," explaining:

> There is insufficient high quality clinical evidence in the peer-reviewed medical literature to make conclusions about the relative safety/efficacy of proton beam radiation

>for prostate cancer, as compared to standard of care photon radiation. Withholding proton radiation is not expected to negatively affect the patient's health, as there are other highly effective and safe options for treatment of his malignancy. As such, based on the evidence-based literature, the proposed treatment is not medically necessary.

AR3973-3974.

The AMR reviewer recommended that "[Anthem] should not cover the proposed treatment." AR3974. According to the AMR Report, the reviewer "does not accept compensation for review activities that is dependent in any way on the specific outcome of the case," the reviewer "was not involved with the specific episode of care prior to referral of the case for review," and the reviewer "does not have a material professional, familial, or financial conflict of interest" in reviewing the matter. AR3971. Plaintiff proceeded with Dr. Choi's recommendation and completed a course of 39 fractions of PBRT from April 3, 2018 to May 25, 2018 which he paid for out of pocket. AR1183, 2647-2648. On January 24, 2019, Plaintiff and Dr. Choi appealed the denial of Plaintiff's PBRT on a post-service basis. AR760-766. On February 25, 2019, Plaintiff submitted more correspondence claiming that PBRT enabled him to successfully treat his cancer without missing any work or experiencing any side effects. AR785-787; 1165. Plaintiff wrote that PBRT satisfies Anthem's requirement that the treatment must be "consistent with the standards of good medical practice which are generally accepted by the medical-scientific community" because many insurance carriers, Medicare, and the FDA approve PBRT. AR787.

On February 28, 2019, Anthem responded to these appeal letters stating it would treat them as a standard post-service appeal request. AR1687. On April 26, 2019, Anthem responded with a first level post-service appeal denial. AR717-718. Anthem noted the decision had been reviewed by a medical reviewer specializing in

radiation oncology, reasoning that there was insufficient evidence that PBRT improves health outcomes for prostate cancer and the treatment thus was not medically necessary. AR717. Anthem referenced the AIM Guidelines and provided online links to the other medical policies and clinical guidelines. AR717. Plaintiff emailed Anthem and wrote that "once again none of the points that I raised in the attached appeal letter were addressed" by Anthem. AR1263. Plaintiff requested that Anthem address each point raised in his appeal letter, but Anthem did not respond. AR1267.

Plaintiff retained counsel and submitted a voluntary second level post-service appeal on August 19, 2019. AR702-1193; 637-699. In support of the appeal, Plaintiff provided a sampling of five medical studies published between 2016 to 2019 which summarized PBRT outcomes for prostate cancer in comparison to intensity-modulated radiation therapy ("IMRT"). AR703. On September 28, 2019, Anthem upheld its denial, explaining that the Grievance Advisory Panel met on September 27, 2019 to consider the second level appeal. AR1196. Specifically, a panel of medical professionals relied on the Medical Policy and medical studies to determine that PBRT did not work as well as other prostate cancer treatments. AR1252.

### Relevant Policy Provisions

ERISA governs the Plan and Plaintiff's claim for benefits thereunder. Anthem denied Plaintiff's claims based on the Plan and the Westlake Medical Benefits Member Handbook ("SPD"). AR1536; 1539. The Plan states: "This Plan as written herein, together with any amendments to it, constitutes the entire Plan." AR1653. Section 2.12 states, in part: "The Claims Administrator is not an insurer of health benefits under this Plan, is not a fiduciary of the Plan, and does not exercise any of the discretionary authority and responsibility granted to the Plan Administrator. The Claims Administrator is not responsible for Plan financing and does not guarantee the availability of benefits under this Plan, but shall process claims consistent with

both the terms of the Plan, and with generally accepted standards of claim processing for professional administrators." AR1539.

Section 17.2 states:

**Claims Administrator's Responsibilities:**

The Claims Administrator on behalf of the Plan Administrator shall have the authority and responsibility for:

a) Interpreting this Plan's provisions relating to coverage except where the Claims Administrator requests an interpretation or a claimant files an appeal with the Plan Administrator, in which case the Plan Administrator shall interpret the Plan and shall communicate in writing to the Claims Administrator the appropriate interpretation of the Plan;
b) Administering the Plan's claim procedures;
c) Processing checks for benefits in accordance with Plan provisions;
d) Filing claims with the insurance companies, if any, who issue stop loss insurance policies to the Employer;
e) Transmitting and certifying such information as needed by the Plan Administrator to file the annual report under Section 104 (a)(1)(A) of ERISA and Code Section 6039D; and
f) Performing all other responsibilities delegated to the Claims Administrator in the instrument appointing the Claims Administrator.

AR1654-1655. The SPD contains the following relevant language:

The Claims Administrator on behalf of the Plan Administrator shall have the authority and responsibility for:

Interpreting this plan's provisions relating to coverage except where the Claims Administrator requests an interpretation or a claimant files an appeal with the Plan Administrator. In that case, the Plan Administrator shall interpret the plan and shall communicate in writing to the Claims Administrator the appropriate interpretation of the plan;

Administering the plan's claim procedures;

> Performing all other responsibilities delegated to the Claims Administrator in the instrument appointing the Claims Administrator.
>
> If you believe you're entitled to benefits or rights under a plan that have not been provided, you should file a written claim to the Claims Administrator.

AR67-68.

The Plan only covers a service that is Clinically Appropriate, which is defined as a service which meets all of the following criteria:

> a) Is consistent with the standards of good medical practice which are generally accepted by the medical-scientific community in the United States of America;
> b) Is consistent with the symptoms or diagnosis of the condition for which services, treatment, or supplies are rendered;
> c) Is not provided solely for the convenience of the patient or Provider;
> d) Is necessary for the diagnosis or correction of a condition which is threatening to the life, health or physical wellbeing of the Covered Person, or is the source of extreme physical discomfort; and
> e) Is not Experimental or investigational, unless it is a part of Approved Clinical Trial.

AR1539.

"In the case of a notice of adverse determination," the Plan requires the Claims Administrator to provide "specific reasons for any adverse determination of claim, reference to pertinent Plan provisions, a description of any additional information necessary to perfect the claim, and a description of the Plan's review procedures…" AR1636. The SPD provides that if a claim is denied, the notice must explain any guideline protocols or other similar criteria used to inform the benefit denial, and if the denial is based on clinical appropriateness or an experimental treatment exclusion or limit, an explanation of the issue must be provided or made available upon request. AR1514. The SPD requires the same on appeal, noting a decision on an appeal should

explain guideline protocols. AR1515.

The SPD instructs members to submit appeals and requests for Second Level Review to the Claims Administrator, noting:

> In rendering a decision on a second level appeal that is based, in whole or in part, on medical judgment, including a determination of whether a requested benefit is medically necessary and appropriate or experimental/investigative, the appeals department will consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment.

AR70.

The SPD indicates that Experimental/Investigational treatment is not covered, and defines "Experimental/Investigational" as:

> Experimental or investigational treatments, procedures, devices or drugs as determined by the Claims Administrator, except for approved clinical trials.

AR39.

## Medical Necessity Guidelines

Plaintiff had access to Anthem's medical necessity guidelines, which were in effect when Anthem denied Plaintiff's requests. AR81-84, 3713, 1428-1445. Advanced Imaging Clinical Appropriateness Guidelines– Appropriate Use Criteria: Proton Beam Therapy Guidelines ("AIM Guidelines") that Anthem relied on state: "There has been no demonstration to the superiority of proton beam therapy (PBRT) over other radiation modalities for the treatment of prostate cancer, and should not be used outside the setting of a clinical trial." AR3793. Anthem also relied on its Medical Policy THER-RAD.00002 Proton Beam Radiation Therapy ("Medical Policy"), which states: "Proton beam radiation therapy is considered investigational and not medically necessary when criteria are not met and for all other indications, including, but not limited to, the treatment of localized prostate cancer." AR1428. The Medical Policy cites to findings which conclude that "ASTRO does not support

the routine use of PBRT for prostate cancer" and it "should only be performed within the context of a prospective clinical trial or registry." AR1430. The AIM Guidelines and Medical Policy are updated in an attempt to remain current with developments in the medical field and the scientific literature. AR3713, 1428-1445.

In Dr. Choi's pre-service appeal letter, he wrote that PBRT "is the most advantageous treatment for [Plaintiff] as it will limit excess dose to his bladder, small bowel, rectum and surrounding pelvic tissues, thus preventing any worsening of this symptoms." AR744. Dr. Choi continued:

> I note that of the 123 references cited in the BCBS Medical Policy THER-RAD.00002, Proton Beam Radiation Therapy (last reviewed May 2017), only 22 speak specifically to prostate cancer, and the most recent of those dates back to 2013. Even more concerning, the oldest dates back to 1993. You are using evidence that is nearly 25 years old to make decisions on treatment for Mr. Swearingen's life-threatening condition! I also note that of the 22 prostate related references, 6 are not relevant to Mr. Swearingen's case as he has not had a prostatectomy, is over age 60, and his disease is not T3 or T4. For your review, we have provided several recent citations establishing medical necessity of proton beam therapy for prostate cancer. Please see Appendix A. These articles are the foundation of the clinical reason for the selection of proton therapy.

AR745-746.

Dr. Choi wrote that PBRT was superior to IMRT for Plaintiff for the following reasons:

1. "[P]roton beam therapy has been shown to have an 85% 5-year disease-free success rate in patients such as [Plaintiff], who have high-risk prostate cancer. This rate is superior to IMRT which only has a 66% disease control rate in this group."

2. "[O]f importance given [Plaintiff's] urinary symptoms, the proton beam is able to stop at its target while IMR would go through the prostate and leave [Plaintiff's] body through the bladder, rectum, and pelvic tissues. [Plaintiff's]

bladder and bowel will be spared from excess radiation dose, leading to less toxicities than he would experience with IMRT given his particular condition."

      3.     "Radiation to the bladder and surrounding areas caused by" IMRT "can cause incontinence. Genitourinary toxicity rates for patients receiving PBRT are approximately 70%, while those for patients receiving" IMRT "are noted at nearly 80%. Because [PBRT] affords us the ability to treat [Plaintiff's] tumor itself with a 35% lower dose to the bladder than that of IMRT, we are able avoid worsening [Plaintiff's] already moderate urinary complications."

      4.     PBRT reduces risk of impotence and radiation could worsen Plaintiff's erectile dysfunction.

      5.     "IMRT unnecessarily irradiates the pelvis while [PBRT] limits exit doses to almost none. Grade 3 gastrointestinal (GI) toxicity rates with conventional IMRT are six (6) times that of [PBRT], which has a baseline rate of 1%. Multiple peer-reviewed prospective studies have found that [PBRT] reduces the risk of gastrointestinal side effects, such as rectal bleeding and incontinence of stools, in comparison to" IMRT and other radiation therapies because PBRT "decreases the radiation dose to gastrointestinal structures by at least 59%. [PBRT] will allow us to provide adequate coverage to [Plaintiff's] prostate and seminal vesicles to eradicate the cancer, while eliminating the excess radiation which would in turn be received by the surrounding healthy tissues if treated with IMRT, leading to adverse outcomes."

      6.     "IMRT would cause the delivery… of unnecessary radiation to areas of [Plaintiff's] normal, health, cancer-free tissue that he would not receive from" PBRT. The "excess radiation delivery areas of his healthy bladder, rectum, and surrounding healthy tissue via IMRT is equivalent to the amount of radiation distributed by five million+ (5,000,000+) dental x-rays." Plaintiff is "at risk for secondary malignancies such as rectal and bladder cancer associated with radiation therapy. Current literature supports [PBRT] over IMRT for the treatment of prostate

adenocarcinoma because [PBRT] has been shown to decrease secondary malignancies by 26%."

AR745-747.

## II. CONCLUSIONS OF LAW[2]

### A. Standard of Review

The court reviews challenges to an ERISA plan's denial of benefits de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where such discretion is vested in the administrator, a district court reviews the administrator's determinations for an abuse of discretion. *Nord v. Black & Decker Disability Plan*, 356 F.3d 1008, 1010 (9th Cir. 2004) ("[W]here, as here, a plan administrator has 'discretionary authority to determine eligibility for benefits,' we review the benefits decision for abuse of discretion"). ERISA allows fiduciaries to delegate responsibilities through procedures in the plan. 29 U.S.C. § 1105(c)(1). When an entity other than the plan administrator makes a benefit determination under an ERISA plan, the standard of review depends "on whether the… Plan contemplated the possibility of a transfer of discretionary authority to a third-party and whether there [is] evidence establishing delegation…" *Shane v. Albertson's Inc.*, 504 F.3d 1166, 1171 (9th Cir. 2007).

Anthem relies on terms in the SPD and Plan to establish that it maintained discretion to determine Plaintiff's entitlement to benefits. The parties disagree on whether the SPD can delegate discretionary authority to Anthem: Plaintiff claims that the SPD summarizes the Plan and cannot add new terms, while Anthem claims the SPD is a Plan document with enforceable terms. In *CIGNA Corp. v. Amara*, the Supreme Court concluded that "summary documents, important as they are, provide communication with beneficiaries *about* the plan, but that their statements do not

---

[2] Any finding of fact which is deemed a conclusion of law is incorporated herein by reference.

themselves constitute the *terms* of the plan…" 564 U.S. 421, 438 (2011) (emphasis in original). In *Mull for Mull v. Motion Picture Indus. Health Plan*, 865 F.3d 1207, 1210 (9th Cir. 2017), the Ninth Circuit clarified:

> *Amara* addressed only the circumstance where both a governing plan document and an SPD existed, and the plan administrator sought to enforce the SPD's terms over those of the plan document… Accordingly, an SPD may constitute a formal plan document, consistent with *Amara*, so long as the SPD neither adds to nor contradicts the terms of existing Plan documents. Here, the SPD is part of the plan itself, and there is no conflict between the SPD and the Trust Agreement. *Amara* does not prohibit this type of arrangement.

Here, the Court considers the SPD as a Plan document because its terms do not conflict with the Plan. *Id.; see also Langlois v. Metro. Life Ins. Co.,* 833 F. Supp. 2d 1182, 1185 (N.D. Cal. 2011) ("However, the Court does not read *Amara* to preclude any reliance on the SPD in determining whether the plan administrator has discretion to deny benefits.") (citing *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1143 (9th Cir. 2002)). The Plan documents give Westlake discretionary authority as fiduciary and Anthem the delegated discretionary authority as Claims Administrator. *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 874 (9th Cir. 2004) (applying abuse of discretion standard when ERISA plan "unambiguously confers discretion on the administrator"). Namely, the Plan states that Anthem, as Claims Administrator, shall interpret the Plan's provisions related to coverage, administer the Plan's claim procedures, and perform all other responsibilities delegated to it. AR1654-1655. The SPD states that Anthem, on behalf of Westlake, has the "authority and responsibility" to interpret the "Plan's provisions relating to coverage," and to perform "all other responsibilities delegated to the Claims Administrator" in the Plan. AR67. The SPD further indicates that Anthem has discretion to determine whether a treatment is medically necessary. AR70. Plaintiff's cited Plan terms do not undercut the delegation of authority to Westlake as fiduciary and delegation of distinct authority—i.e. medical necessity

1 determinations—to Anthem as Claims Administrator. For example, the Plan provides that the "Claims Administrator… is not a fiduciary of the Plan, and does not exercise any of the discretionary authority and responsibility granted to the Plan Administrator. The Claims Administrator is not responsible for Plan financing and does not guarantee the availability of benefits under this Plan, but shall process claims consistent with both the terms of the Plan, and with generally accepted standards of claim processing for professional administrators." AR1539. This language does not foreclose Anthem's authority to make coverage determinations delegated to it in the SPD—the SPD delineates distinct duties between the fiduciary and the claims administrator. Because the Plan documents demonstrate that Anthem maintained discretion as to Plaintiff's entitlement to benefits, the Court reviews Anthem's denial for abuse of discretion. *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008).

### B. Anthem's Alleged Conflict of Interest

Even where a court reviews an administrator's benefit determination for abuse of discretion, it should consider the "nature, extent, and effect on the decision-making process of any conflict of interest that may appear in the record." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 967 (9th Cir. 2006). Plaintiff argues that Anthem operated under a conflict of interest because it applied "outdated guidelines" and did not consider the most current medical studies applicable to Plaintiff's condition. These aversions do not satisfy Plaintiff's burden. *Demer v. IBM Corp. LTD Plan*, 835 F.3d 893, 902 (9th Cir. 2016) ("It is [plaintiff's] burden, as the party claiming a conflict, to produce evidence of a financial conflict sufficient to warrant a degree of skepticism."). Because Anthem was neither the plan administrator nor the benefits' funding source, a conflict of interest is unlikely. *James v. AT & T W. Disability Benefits Program*, 41 F. Supp. 3d 849, 873 (N.D. Cal. 2014) ("Where the party that must pay the benefits and the party that administers the benefits are not the same, there is little risk, if any, of a conflict of interest.") (citing *Metro. Life Ins. Co.*, 554 U.S. at 108). That Anthem allegedly consulted the wrong studies to assess

1  Plaintiff's claim is not persuasive evidence of a conflict and nothing in record
2  suggests a financial conflict or procedural irregularity that could impact the standard
3  of review. *Ekno v. Nw. Mut. Life Ins. Co.*, 2008 WL 782728, at *6 (E.D. Cal. Mar.
4  20, 2008) ("Therefore, because there is no evidence before the court of a
5  serious conflict of interest, nor is there evidence of a wholesale or flagrant violation
6  of ERISA's procedural requirements or the Plan's claims handling procedures, the
7  court concludes that de novo review of NWML's decision to deny LTD benefits is
8  improper.") (citing *Abatie*, 458 F.3d at 971) (noting that procedural irregularities
9  must be "wholesale and flagrant violations" to alter the standard of review)).

### C. Whether Anthem Abused Its Discretion

"A plan administrator abuses its discretion under ERISA where its decision is '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from facts in the record.'" *Howard v. Blue Cross Blue Shield of Arizona*, 822 F. App'x 628, 629 (9th Cir. 2020) (citation omitted). An administrator's decision will not be disturbed if it is the "result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Glenn v. MetLife*, 461 F.3d 660, 666 (6th Cir. 2006), *aff'd sub nom*. *Metro. Life Ins. Co.*, 554 U.S. 105. Plaintiff bears the burden of establishing that Anthem abused its discretion. *Baxter v. MBA Grp. Ins. Tr. Health & Welfare Plan*, 958 F. Supp. 2d 1223, 1230 (W.D. Wash. 2013) ("Plaintiff bears the burden of showing that proton therapy was a medically necessary treatment for his disease.").

The Ninth Circuit recently affirmed denial of benefits where Blue Cross Blue Shield of Arizona ("BCBSAz") declined to cover plaintiff's PBRT as investigational and not medically necessary. *Howard*, 822 F. App'x at 629. The court held that: (1) BCBSAz did not abuse its discretion because it did not rely on clearly erroneous findings of fact, (2) there was no conflict of interest in BCBSAz's control of THER-RAD.00001, and (3) BCBSAz had no control over Advanced Imaging Clinical Appropriateness Guidelines – Appropriate Use Criteria: Imaging of the Brain. *Id.*

1  *Howard* involved the same doctor (Dr. Choi), same medical facility, same
2  treatment, and same approximate grounds for denial as this case. Plaintiff nonetheless
3  contends that the result should be different here because Anthem allegedly ignored
4  Plan terms when it relied on medical necessity guidelines to deny Plaintiff's claim.
5  Plaintiff also stresses that the final denial in *Howard* was roughly four years before
6  the final denial in this case, and that his proffered medical studies were published
7  after *Howard*'s final denial. Similar arguments were rejected in *Howard*. *See Howard*
8  *v. Blue Cross Blue Shield of Arizona*, 2019 WL 3068202, at *4 (D. Ariz. July 12,
9  2019), *aff'd,* 822 F. App'x 628 (9th Cir. 2020) (rejecting argument that "Defendant
10 should not have relied on an outdated MCG which in turn relied on studies that failed
11 to take into account recent science on PBRT" because plaintiff offered "no evidence
12 that the MCG on which Defendant relied was 'clearly erroneous.'"); *see also id.*
13 (rejecting argument "that Defendant abused its discretion by failing to take into
14 account the opinions of Plaintiff's treating oncologists and instead relying on
15 independent reviewing doctors who do not specialize in oncology.").

16     This Court likewise rejects Plaintiff's proffered medical records and assertion
17 that PBRT is commonly used as evidence that Anthem's guidelines were erroneous.
18 *Id.* (finding that plaintiff's medical studies and "assertion that PBRT is becoming
19 more widely used" did not establish that guidelines were clearly erroneous). As
20 Anthem notes, Plaintiff inconsistently criticizes Anthem's reliance on "outdated"
21 studies from 2017 while pointing the Court to even older studies. In any event, it is
22 not the Court's role to determine which medical opinion should prevail. *Woodruff v.*
23 *Blue Cross & Blue Shield of Alabama*, 2018 WL 571933, at *7 (N.D. Ala. Jan. 26,
24 2018) ("[T]he proper interpretation of medical research studies is not before this
25 court. Rather, the sole issue is whether BCBS's decision denying coverage for PBRT
26 was supported by the language of the Plan based on the information before the
27 administrator at the time the decision was made."). Despite long-standing industry
28 variance, courts consistently confirm the propriety of analogous denials of PBRT

treatment. *Id.* ("Given the demonstrated lack of agreement in the medical community as to the proper role of PBRT treatment, the Plan's recognition of this lack of agreement, the clear statement in Medical Policy #348 that PBRT for prostate cancer is not a covered service, and the multiple reviews of its decision undertaken by the Plan, the denial of benefits here was neither arbitrary nor capricious."); *Turner v. Alcoa, Inc.,* 2016 WL 8257672, at *2 (E.D. Tenn. Dec. 29, 2016) (finding that administrator did not abuse its discretion in applying internal medical guidelines which stated: "All other applications or uses of PBRT [including as treatment for prostate cancer] are considered experimental/investigational and ineligible for payment. Currently published medical literature does not provide sufficient documentation to permit conclusions concerning the effect on health outcomes. This modality remains an area of research."); *Dillon v. Timken Co.*, 2013 WL 4508975, at *3 (W.D. Pa. Aug. 26, 2013) (finding that the evidence "overwhelmingly" established no abuse of discretion in finding that PBRT for prostate cancer was experimental); *Gardner v. Group Health Plan*, 2011 WL 1321403, at *4 (E.D.N.C. Apr. 4, 2011) (granting "summary judgment as the Plan clearly excludes [PBRT] as experimental and there is no issue of material fact regarding whether Defendant abused its discretion in denying benefits"). Plaintiff's insistence that recent literature runs contrary to these denials does not allow the Court to ignore controlling Ninth Circuit authority or weigh the merits of an ostensibly ongoing medical debate.

Plaintiff's argument that Anthem's denials ignored Plan terms contradicts the record, which demonstrates that Anthem complied with the Plan by relying on its guidelines and providing Plaintiff adequate notice of same. The Plan and the SPD provide that experimental or investigational treatment is not covered. AR39, 1539. "In the case of a notice of adverse determination," the Plan requires the Claims Administrator to provide "specific reasons for any adverse determination of claim, reference to pertinent Plan provisions, a description of any additional information necessary to perfect the claim, and a description of the Plan's review procedures…"

AR1636. If a claim is denied, the notice must explain any guideline protocols or other similar criteria used to inform the benefit denial, and if the denial is based on clinical appropriateness or an experimental treatment exclusion or limit, an explanation of the issue must be provided or made available upon request. AR1514. Anthem complied with these requirements by informing Plaintiff that his request was denied as "investigational and not medically necessary" under the Plan and consistent with supporting criteria available to Plaintiff. AR1196-1197, 1252.

Like the record in *Howard*, the record here provides enough support for Anthem to find that PBRT was not medically necessary to treat Plaintiff's prostate cancer relative to traditional treatments with known safety, efficacy, and quality of life outcomes. *Turner v. Alcoa, Inc.*, 2017 WL 627447, at *2 (E.D. Tenn. Feb. 15, 2017) ("That courts were still upholding the denial of coverage for the procedure as experimental at the time [the defendant] made its determination supports the conclusion that the decision was not arbitrary and capricious.") (quoting *Peruzzi v. Summa Med. Plan*, 137 F.3d 431 (6th Cir. 1998)). Four physician reviewers provided substantial evidence that supported Anthem's determination. *Howard*, 822 F. App'x at 629 (citing *Woodruff*, 2018 WL 571933, at *7 (finding that independent experts' decision to uphold denial of coverage supported determination that PBRT for prostate cancer was experimental); *Turner*, 2016 WL 8257672, at *8 (same); *Dillon*, 2013 WL 4508975, at *2 (same)). Then-existing guidelines noting the insufficient evidence concerning PBRT's health impacts bolstered Anthem's determination, as did the aforementioned legal authorities holding that PBRT was experimental and not medically necessary for prostate cancer. Despite Plaintiff's contrary assertions, the Court cannot find that Anthem abused its discretion by relying on four physician reviewers and its guidelines instead of Dr. Choi. *Howard*, 2019 WL 3068202, at *4 ("The Court declines to find that reliance on two licensed doctors of internal medicine, rather than an oncologist, leads to a clearly erroneous finding of fact.").

Bound by *Howard*, the Court finds that the record evidences a reasonable

review and proper reliance on then-existing policies, guidelines, and literature as required by the Plan. Anthem's determination that the Plan did not cover Plaintiff's PBRT was not an abuse of discretion.

### III. CONCLUSION

Judgment shall be entered in Anthem's favor consistent herewith.

Dated: August 24, 2021

By: *Mark C. Scarsi*
Mark C. Scarsi
United States District Court Judge